UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

TERRY HENDERSON, )
)
    Plaintiff, )
)
v. ) Case No.: 4:17-cv-00039-JHE
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )

### MEMORANDUM OPINION[1]

Plaintiff Terry Henderson ("Henderson") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Henderson timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED** and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

Henderson filed an application for DIB on July 3, 2013, alleging disability beginning on April 24, 2009. (Tr. 167-75). However, due to a prior unfavorable decision, Henderson amended his onset date to January 15, 2011. (Tr. 36, 200-02, 234). The Commissioner initially denied Henderson's claim, (tr. 94), and Henderson requested a hearing before an ALJ, (tr. 107-10). After

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

an October 21, 2015 hearing, the ALJ denied Henderson's claim on December 8, 2015. (Tr. 19-29). Henderson sought review by the Appeals Council, but it denied his request for review on November 8, 2016. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On January 9, 2017, Henderson initiated this action. (Doc. 1).

Henderson was forty-two years old on December 31, 2013, his date last insured. (Tr. 27). Henderson has a high school education and has previously worked as a retail store manager, tank truck driver, sales route driver, and construction worker. (Tr. 27, 38-40, 55).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

3

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Henderson had not engaged in substantial gainful activity from January 15, 2011, the alleged onset date of his disability, through December 31, 2013, his date last insured ("DLI"). (Tr. 21). At Step Two, the ALJ found Henderson has the following severe impairments: degenerative disc disease, bipolar disorder, and Schmorl's nodes of the thoracic spine. (*Id.*). At Step Three, the ALJ found Henderson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22).

Before proceeding to Step Four, the ALJ determined Henderson's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through his DLI, Henderson had the RFC

4

to perform light unskilled work as defined in 20 CFR 404.1567(b) except work not requiring complex instructions or procedures; with no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; no operating of motor vehicles; occasional stooping, crouching, or crawling; frequent interaction with co-workers and supervisors; and occasional contact with the general public.

(Tr. 23). At Step Four, the ALJ determined Henderson could not perform any relevant past work through his DLI. (Tr. 27). At Step Five, the ALJ determined that, through Henderson's DLI, considering his age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy Henderson could have performed. (Tr. 27). Therefore, the ALJ determined Henderson had not been under a disability at any time between the alleged onset date and his DLI and denied his claim. (Tr. 28-29).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Henderson raises five objections to the denial of DIB: (1) the ALJ failed to assign weight, much less the proper weight, to the opinion of Dr. Maury Minton, his treating physician; (2) the ALJ did not state adequate reasons for his credibility finding; (3) the ALJ failed to fully develop the record; (4) the ALJ's decision was not based on substantial evidence; and (5) the RFC is not supported by substantial evidence and violates SSR 96-8a. (Doc. 8 at 2). Henderson has also

moved for a Sentence Six remand to consider additional evidence he has submitted in this proceeding. (Doc. 10). Because the first and third of these require remand, the remainder of Henderson's arguments are not addressed.

**A. The ALJ Did Not Adequately Assess Dr. Minton's Opinion and Did Not Develop the Record in Connection With It**

Henderson argues the ALJ erred when he did not assign any weight to an opinion provided by his treating physician, Dr. Maury Minton, (doc. 8 at 21-23), and that the ALJ failed to obtain records from physicians including Dr. Minton, (*id.* at 33-35). As these two arguments dovetail, they are discussed together below.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that

6

"good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The only record evidence of Dr. Minton's opinion is a single-page "Request for Medical Information" related to work requirements for the State of Alabama Department of Human Resources' food stamp program, completed by Dr. Minton on April 14, 2015 (the "DHR response"). (Tr. 581). The form asks: "Based on this individual's current medical condition, do you believe s/he is mentally and physically able to work?" Dr. Minton ticked the box for "no." (*Id.*). Asked to "[d]escribe the medical condition that prevents this person from being able to work," Dr. Minton responded: "Thoracic pain secondary to inoperable Scheuermann kyphosis, not amenable to surgery." (*Id.*). Dr. Minton identified the onset date for the condition as April 2009. (*Id.*).

The Commissioner argues the record does not support Dr. Minton was Henderson's treating physician, or a physician at all. (Doc. 9 at 24-25). This is a non-starter. The Commissioner states Dr. Minton's signature on the request for medical information is "'Maury P. Minton,' with no indication that he had medical qualifications," (*id.*), but this ignores the fact the block in which Dr. Minton's signature appears is for the "Signature of Physician or Psychologist." The Commissioner also notes the record contains no treatment notes from Dr. Minton.[4] However, at the hearing, Henderson testified that Dr. Minton was prescribing medications for him, specifically identified Dr. Minton as "my family physician at Gadsden Family Practice." (Tr. 49-50). Immediately after identifying Dr. Minton as his family physician, Henderson discussed the DHR report and Dr. Minton's conclusion he was disabled. (Tr. 50-51). This is sufficient to

---

[4] The absence of medical records is related to Henderson's claim the ALJ failed to fully develop the record and is discussed further below.

7

conclude Dr. Minton fits the definition of a treating physician: an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2).[5]

Next, the Commissioner argues the request was not an "opinion" within the meaning of the regulations because it offers only a conclusory legal opinion on an issue reserved for the Commissioner. (Doc. 9 at 24). "According to 20 C.F.R. § 404.1527(d), the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner." *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x. 833, 834 (11th Cir. 2017). However, Dr. Minton's opinion does somewhat more than simply state Henderson is unable to work. It includes a diagnosis — "[t]horacic pain secondary to inoperable Scheuermann kyphosis" — and a statement that the impairment is "not amenable to surgery." Even if the ultimate conclusion of disability is an issue reserved for the Commissioner, Dr. Minton's response is still a "statement[] from [an] acceptable medical source[] that reflect[s a] judgment[] about the nature and severity of [Henderson's] impairment(s), including [his] symptoms, diagnosis and prognosis . . . ." 20 C.F.R. § 404.1527 (emphasis added). And even if the opinion is a nonmedical opinion reserved to the Commissioner, ignoring an opinion on an issue reserved to the Commissioner is inconsistent with Social Security Ruling 96-5p, which was in effect at the time the ALJ denied benefits to Henderson (and which the ALJ specifically stated he had complied with, (*see* tr. 24)):

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's

---

[5] Section 404.1527 applies to claims (like Henderson's) that were filed before March 27, 2017. It has since been replaced by 20 C.F.R. § 404.1520c.

ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. <u>Such opinions on these issues must not be disregarded</u>. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183 (emphasis added).[6] The rules further require the ALJ to "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." *Id.*

The Commissioner argues that "[t]o the extent that this Court considers Mr. [sic] Minton's statement an 'opinion' the ALJ's failure to discuss this 'opinion' would be harmless at most because the ALJ thoroughly considered the evidence, which was inconsistent with Mr. [sic] Minton's opinion." (Doc. 9 at 24 n.4). To support this, the Commissioner points the court to *Chapman v. Comm'r of Soc. Sec.*, 709 F. App'x 992 (11th Cir. 2017). In that case, the ALJ addressed a letter from a treating physician listing some of the claimant's impairments and indicating the claimant could not serve on a jury due to the fact she was "permanently disabled." *Id.* at 994-95. The Eleventh Circuit assumed this was a "medical opinion" under § 404.1527(a)(1) and that the ALJ erred by failing to explain why he disregarded the opinion. *Id.* at 995. However, the Eleventh Circuit found the ALJ had good cause to disregard the letter, as it was unsupported by the doctor's own findings (which the ALJ had reviewed) and the findings of other doctors. *Id.* Therefore, the court concluded the ALJ was entitled to discount the treating physician's conclusory

---

[6] On March 27, 2017, the Social Security Administration rescinded SSR 96-5p for claims filed on or after that date. *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298 (S.S.A. Mar. 27, 2017). For claims that postdate the rescission, "adjudicators will not provide any articulation about their consideration of [medical source opinions on issues reserved to the Commissioner] because it is inherently neither valuable nor persuasive to us." *Id.*

9

statement the claimant was disabled, and any error in failing to articulate reasons for discounting the letter was harmless. *Id*.

Although the jury duty excuse from the treating physician in *Chapman* is nearly identical in content to Dr. Minton's DHR response, *Chapman* is distinguishable. The ALJ in *Chapman* had the treating physician's records in hand, which allowed him to conclude that the treating physician's medical findings did not support a determination of disability. In other words, although the ALJ did not evaluate the jury excuse itself, he implicitly rejected its conclusion based on his review of a record including the physician's medical findings. Here, by contrast, only the DHR response is in the record — even though the ALJ was aware that Dr. Minton was Henderson's treating physician. The court cannot infer the ALJ considered the medical evidence supporting the DHR response, and thus conclude the ALJ's error was harmless, because he unquestionably did <u>not</u> consider that evidence. The inescapable conclusion is the ALJ simply ignored Dr. Minton's opinion, which, even if the opinion was a nonmedical opinion reserved for the Commissioner, he was not entitled to do under the regulations applicable to Henderson's claim. *See* SSR 96-5p. Therefore, the Commissioner's implicit rejection of Dr. Minton's opinion is not supported by substantial evidence, and remand is required.

That brings the court to Henderson's argument the ALJ failed to fully develop the record. "It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (internal citations omitted). Although the Commissioner is correct Henderson himself failed to provide the ALJ with Dr. Minton's records, the record contained the DHR response, testimony from Henderson that Dr. Minton was his treating physician, and no treatment records

10

from Dr. Minton at all. Faced with this, the ALJ was required under the regulations then in effect to "make every reasonable effort to recontact [Dr. Minton] for clarification." SSR 96-5p. The record does not reflect the ALJ made any effort to do so, much less "every reasonable effort." Therefore, the undersigned concludes the ALJ did not exercise his duty to develop the record, and remand would be warranted in any case.

On remand, the ALJ should determine whether Dr. Minton's opinion is a medical opinion from a treating source such that good cause is required to reject it, or whether it is a nonmedical opinion. In either case, the ALJ should specifically assign weight to the opinion. To the extent the record must be further developed for the ALJ to analyze the opinion, the ALJ should do so, whether through recontacting Dr. Minton or otherwise. Although the undersigned does not decide whether Sentence Six remand would be independently required for the ALJ to consider the records Henderson has submitted in connection with his motion to remand, the ALJ should also consider on remand any relevant evidence included in that motion.[7]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Henderson's claim for a period of disability and disability insurance benefits is **REVERSED** and this action **REMANDED** to consider Dr. Minton's opinion, consistent with this opinion.

---

[7] Responding to Henderson's motion to remand, the Commissioner argues Dr. Minton's records are not chronologically relevant such that they warrant a Sentence Six remand, since they were generated from July 2014 to February 2016, at least seven months after his DLI. (Doc. 12 at 4-5). Since remand in this case is in conjunction with reversal of the Commissioner's decision, it is pursuant to Sentence Four and not Sentence Six. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). Therefore, the Sentence Six remand standard is not at issue.

11

DONE this 20th day of September, 2018.

                                          **JOHN H. ENGLAND, III**
                                          UNITED STATES MAGISTRATE JUDGE